UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**03**CR **1 0 3 6 3** RCL

CRIMINAL NO.

VIOLATIONS:

| | |
|---|---|
| UNITED STATES OF AMERICA | 18 U.S.C. §1341 (Mail Fraud) |
| v. | 18 U.S.C. §1956 (Money Laundering) |
| CHUONG VAN DUONG, | 31 U.S.C. §5324 (Structuring) |
| Defendant | 18 U.S.C. §2 (Aiding and Abetting) |
| | 18 U.S.C. § 981 and 28 U.S.C. § 2461(c) and 18 U.S.C. § 982 (Criminal Forfeiture) |

INDICTMENT

THE GRAND JURY CHARGES:

1. At all times material to this indictment, CHUONG VAN DUONG ("DUONG"), was an individual and a citizen of Vietnam, who resided in Framingham, Quincy, Boston and elsewhere in the District of Massachusetts.

2. At all times material to this indictment, J.K.C. was an individual who resided in Boston, Quincy, and elsewhere in the District of Massachusetts.

3. At all times material to this indictment, K.D.V. was an individual who resided in Quincy and elsewhere in the District of Massachusetts. K.D.V., an attorney, served as legal counsel to DUONG and various corporations identified in this indictment.

4. At all times material to this indictment, J.H.N. was an individual who resided in

1

Boston, Quincy and elsewhere in the District of Massachusetts.

5. At all times material to this indictment, H.T. was an individual who resided at Dorchester and elsewhere in the District of Massachusetts.

6. ASIA GOLDEN DRAGON CORPORATION ("AGDC") is a Massachusetts corporation incorporated by DUONG on March 20, 1995. DUONG has served as the President and a Director of AGDC since its incorporation. The Articles of Organization of AGDC identify its business as "International trade and foreign investment (including technology transfer)." Prior to December 1998, DUONG conducted the purported business activities of AGDC at his residences in Framingham, Massachusetts. From in or about December 1998 to in or about October 2000, DUONG conducted the purported business activities of AGDC from a jewelry store at 333 Washington Street, Boston, MA, known as K&C JEWELRY, which was operated by DUONG and K.N. From in or about October 2000 until in or about January 2001, DUONG conducted the purported business activities from 1444 Dorchester Avenue, Dorchester, MA. Since in or about January 2001 to the present, DUONG operated the purported business activities of AGDC out of 1550 Hancock Street, Quincy, MA. DUONG also operates a small jewelry store from this location.

7. GLOBAL GARMENT EXCHANGE INTERNET CORPORATION ("GLOBAL") is a Massachusetts corporation incorporated by DUONG on June 19, 2000. DUONG is a Director and the Chairman of GLOBAL. J.K.C. is a Director and Vice Chairman of GLOBAL and since September 19, 2000 has served as the President of GLOBAL. The Articles of Organization of GLOBAL state that the business of GLOBAL is "to develop, manufacture and market products in the garment industry and related industries, such as fashion, jewelry, cosmetics, ... and to engage

2

in the business of Web hosting, Web advertising, and Web designing." DUONG conducted the purported business activities of GLOBAL from the same addresses as his other corporations.

8. INTERNATIONAL DIAMOND AND GEM CORPORATION ("INTERNATIONAL DIAMOND") is a Massachusetts Corporation incorporated by DUONG. DUONG is the President of INTERNATIONAL DIAMOND and K.D.V. is identified as the Treasurer and registered agent. The Articles of Organization state that the business of INTERNATIONAL DIAMOND is to engage in the business of jewelry design and repair, jewelry cutting and setting, jewelry service, gold refinery, jewelry importing and exporting, and wholesale and retail of diamond, gold, silver, gemstones, pearls and jade." DUONG operates the small jewelry store located at 1550 Hancock Street under the name of INTERNATIONAL DIAMOND.

9. FIFTH CONTINENTAL CAPITAL GROUP FINANCIAL CORPORATION ("FIFTH CONTINENTAL") is a Massachusetts corporation incorporated by DUONG and J.K.C. on January 16, 2001. DUONG is a Director and Chairman of FIFTH CONTINENTAL as well as its Treasurer and Clerk. J.K.C. is a Director and the President of FIFTH CONTINENTAL. The Articles of Organization of FIFTH CONTINENTAL states that its business is "[t]o be an investment company and to invest stocks of the financial market..., [t]o engage in the business of financial industry, financial service, trading commodity and stock.... [and] Import, export and wholesale commodity." FIFTH CONTINENTAL's principal place of business is 1550 Hancock Street, Quincy, Massachusetts.

10. H&T CORPORATION ("H&T") is a Massachusetts corporation incorporated on September 26, 2000. J.H.N. is a Director and President of H&T. H.T. is a Director, Treasurer and Clerk of H&T. The Articles of Organization of H&T state that its purpose is "to engage in

3

the business of import and export trade of goods." H&T's original place of business was 41 North Main Street, Randolph, Massachusetts. Thereafter, H&T changed its principal place of business to the addresses used by DUONG and his corporations.

## THE SCHEME TO DEFRAUD

11. From in or about 1996 to the present, DUONG engaged in a scheme to defraud numerous persons by inducing such persons to give him money for investment in his international import-export businesses by means of false representations and promises. He falsely told investors that he had been successful in these businesses for many years and had made a lot of money. He falsely promised the investors that they would earn large sums of money on their investments in a short period of time. He also promised that he would use the investors' money for investments, when in fact, he converted the money to cash and spent it for his own purposes.

12. It was part of the scheme that DUONG targeted and solicited money from individuals in the Vietnamese community who had immigrated to the United States. Many of these individuals did not speak or read English or only spoke limited English. DUONG, a Vietnamese immigrant, presented himself as an educated and successful businessman who made money through business in America and was knowledgeable about such matters.

13. It was part of the scheme that DUONG incorporated numerous corporations for the stated purposes of engaging in various international businesses, including (1) international trading and the import and export of goods, such as garments, commodities and jewelry; (2) financial services and investments; (3) the development, manufacture and marketing of fashion and garment products; and (4) Web hosting, advertising, and design. The main corporation used

4

by DUONG in this scheme to defraud was AGDC, which was represented by DUONG to be the parent or mother corporation. The other corporations used by DUONG in the scheme included GLOBAL GARMENT, FIFTH CONTINENTAL, INTERNATIONAL DIAMOND, and H&T. DUONG incorporated and used these companies to make it appear to potential investors that he was in fact engaged in such businesses and was legitimate and successful, when in fact, with the exception of INTERNATIONAL DIAMOND, DUONG knew that these corporations were merely shells that had no legitimate business income or assets and did not conduct legitimate business activities.

14. As part of the scheme to defraud, to make his businesses appear legitimate to potential investors and induce them to invest, DUONG had logos, business cards, photo identification cards, letterhead, signature stamps and seals designed and produced for many, if not all, of these companies. For the same purpose, DUONG also had promotional literature designed and produced, identifying by name and logo his numerous companies, as well as affiliated corporations, which included corporations that DUONG caused investors to incorporate. Similarly, DUONG also developed and maintained on the internet Web sites for some of the companies, describing the businesses and identifying hundreds of companies by name and logo throughout the world represented to be affiliated with AGDC and GLOBAL. The Web sites and the literature produced by DUONG were part of the scheme in that they made DUONG's businesses appear to be expansive and successful worldwide.

15. It was part of the scheme to defraud that DUONG had persons investing with him incorporate corporations of their own. DUONG told such investors that they needed to have companies of their own to participate in DUONG's businesses and enter into contracts regarding

garments and commodities, such as rice and sugar. DUONG had some investors establish off-shore companies, outside of the United States, and these investors received formal corporate documents, seals and stamps for their corporations. DUONG had other investors form Massachusetts corporations. DUONG also told such investors that they needed to open bank accounts in the names of their corporations in order to receive the profit from their business dealings. The incorporation of their own company, the formality of the corporate documents, the payment of the fee, and the opening of bank accounts all made DUONG and his businesses appear to be legitimate.

16. It was further part of the scheme that DUONG told potential investors that he was the owner and President of AGDC, an international company engaged in the business of the import and export of goods, such as garments and commodities, like rice and sugar, and that he was successful and had made millions to billions of dollars through his business. DUONG knew that these representations were false and misleading; AGDC did not conduct any legitimate and successful import-export business and DUONG had not made millions of dollars through such business.

17. As part of the scheme and to induce potential investors into giving him their money, DUONG told investors that he, through AGDC, had a large contract or contracts for garments, rice or sugar, by which he would make a large profit, usually in the millions, and that he would allow them to participate and profit in the business deal with him if they invested a sum of money with him, usually in the range of $20,000 to $30,000 per investor. DUONG would tell potential investors that their money was needed by him for a bond, which was also sometimes referred to by DUONG as a letter of credit, that was necessary in order to complete the business

deal. It was part of the scheme that DUONG told the investors that they would see a significant return on their investments within three months. As DUONG knew, all of these representations and promises that DUONG made to investors were false and were made to defraud such investors of their money.

18. It was part of the scheme that DUONG varied the representations he made to investors in order to convince them to give him their money. For example, DUONG told some investors that he had access to a large sum of money transferred from China to banks in the United States by Chinese Generals and that he could get this money released if he raised enough money for a bond. DUONG told such investors that if they gave him money for the bond, he would give them a significant share of the money held in United States' banks when it was released.

19. It was further part of the scheme that DUONG showed investors bank documents, such as an application for an irrevocable letter of credit, stating that such documents verified that DUONG had access to millions of dollars. These documents would often be written in languages, such as Vietnamese, Chinese and English, that the particular investor could not read.

20. It was also part of the scheme that DUONG showed the potential investors documents which appeared on their face or were represented by DUONG to be contracts, to which AGDC was a party, for large quantities of garments, rice, sugar or other goods with total contract sales prices in the hundreds of millions of dollars. As part of the scheme, DUONG also presented investors with documents which appeared and which he represented to be contracts for large quantities of garments, rice and sugar that identified the newly incorporated company of the investor as a party to the contract. He also presented them with various other documents

7

purportedly relating to the contracts. These contracts and documents would often be written in languages, such as Vietnamese, Chinese and English, that the particular investor could not read. DUONG had the investors sign these documents and stamp them with their corporate seal, again using the formality and the documents to make the business appear legitimate. As DUONG knew, the representations and promises that DUONG made to investors regarding these documents were false and were made to defraud such investors of their money.

21. It was further part of the scheme that DUONG traveled to China, Vietnam, and other countries and told investors that these trips were related to the businesses and contracts in which they had invested. DUONG invited investors to travel to these countries with them; several investors did accompany him on such trips. It was part of the scheme for DUONG to negotiate and enter into business transactions with companies in Vietnam, China and other countries, to make his business appear legitimate. In the end, no business deals or contracts were ever completed or successful.

22. It was also part of the scheme that DUONG used other persons to assist him in soliciting and inducing investors to give him money. These assistants were also Vietnamese and assisted the scheme by providing DUONG with access to and more credibility with potential investors. It was also part of the scheme that such assistants established separate corporations through which they solicited investors and funneled money to DUONG. Such front corporations and individuals enabled DUONG to further conceal his scheme and to deny responsibility when investors ultimately did not get any profit and lost the money they invested. When investors would ask for their money back, DUONG blamed such assistants for the failure of the business deals and contracts, thereby relieving himself of responsibility. For example, J.H.N. and H.T.,

8

associates of DUONG, incorporated H&T and used H&T to get money from other persons to enable them to conduct business with DUONG related to a rice contract. They opened a bank account at Sovereign Bank in the name of H&T into which they deposited money they received from an individual they solicited. Within days after depositing $21,000 from such individual, two Sovereign Bank cashier's checks were drawn on H&T's account, one for $15,000 and one for $5,000. The Sovereign Bank cashier's check for $15,000 was then deposited into the account of AGDC at Citizen's Bank and the $5,000 Sovereign Bank cashier's check was deposited into DUONG's personal account at Citizen's Bank. The money was thus funneled through H&T to DUONG.

23. It was further part of the scheme that DUONG opened and used numerous bank accounts in the names of the various corporations, as well as DUONG's own name. During the period from December 27, 1995 to the present, DUONG had at least seven different bank accounts in the name of AGDC:

- Fleet Bank A/C XXXXXX-0388 open from 12/31/95 to 6/30/99

- BankBoston A/C XXX-X4388 open from 12/27/95 to 3/28/00

- Fleet Bank A/C XXXXXX-1145 open from 3/13/00 to 6/16/00

- Citizen's Bank A/C XXXXXX-739-0 open from 9/7/00 to 9/30/01

- Citibank A/C XXX6064 from 9/25/00 to 10/23/00

- Sovereign Bank A/C XXXXXXX5123 open from 6/17/00 to 7/31/00

- J.P. Morgan Chase A/C XXX-XXXXX77-65 open from 5/01 to 9/02
  J.P. Morgan Chase A/C XXX-XXXXX61-65 from 11/02 to present.

During the period from January 27, 1998 to the present, DUONG used three personal accounts in

9

his own name at three different banks:

- BankBoston A/C XXX-X2199 open from 1/27/98 to 10/11/01
- Citizen's Bank A/C XXXXXX-581-9 open from 6/8/00 to 5/29/01
- Asian American Bank A/C XXXXX4490 from 4/24/02 to the present

From May 15, 2001 to the present, DUONG also used an account in the name of INTERNATIONAL DIAMOND at Citizen's Bank, A/C XXXXXX-778-8; he used this account to conduct the limited activities of his small jewelry store as well for conducting transactions with the money he obtained from investors. From January 2, 2001 to June 13, 2001, DUONG and J.K.C. also used a bank account in the name of GLOBAL GARMENT at Citizen's Bank A/C XXXXX-929-4. An account was also opened at Sovereign Bank, A/C XXXXXXX1997, in the name of H&T by J.H.N. and H.T., associates of DUONG.

24. It was part of the scheme that DUONG deposited the funds he received from investors into different bank accounts he controlled, rather than the same account. As part of the scheme, DUONG deposited funds from investors into accounts held in corporate names and then withdrew the funds by checks payable to himself, and cashed them. DUONG, assisted by others, also funneled money obtained from investors through accounts held in one corporate name to accounts held in the name of AGDC or one of Duong's personal accounts. In this way, DUONG used these different accounts to conceal the fraudulent scheme and the money he obtained and to divert the proceeds of the scheme to himself by converting it to cash.

25. It was further part of the scheme that DUONG deposited money received from investors into these accounts and then withdrew the money by means of currency transactions under $10,000 to avoid the reporting of these currency transactions by the bank and to further

10

conceal his fraudulent scheme and the proceeds derived from that scheme. Shortly after deposit, DUONG withdrew such funds by writing checks payable to himself and his associates in amounts less than $10,000, which checks would then be negotiated to cash.

26. To conceal his fraudulent scheme, DUONG conducted most, if not all of his transactions, to avoid the currency transaction reporting requirements and to shield his activity from scrutiny. On several occasions, DUONG withdrew amounts greater than $10,000 over the course of a few days by writing checks to himself and his associates for amounts less than $10,000 which were them negotiated to cash.

27. Over the course of the scheme, DUONG defrauded approximately 10 or more investors of over $200,000.

28. It was also part of the scheme that given that he had promised investors that they would receive a significant return on their investment within a three month period, DUONG gave numerous excuses to investors when they inquired about their investment or requested a return of their money. The lulling of investors was an important part of the scheme because it allowed DUONG to continue to operate the scheme and obtain money from additional investors. DUONG lulled investors in a number of ways over the course of many months and even years.

29. When investors inquired about their investment or requested a return of their money, it was part of the scheme that DUONG told them numerous reasons and excuses as to why the contracts and investments were not yet complete and promised them that they would ultimately make a profit when the investments came through. At times, DUONG also blamed the failure of contracts on others, such as J.H.N., but still promised the investors that they would ultimately be successful. DUONG also continued to make representations, which he knew to be false, about

11

his other businesses, profits and successes in order to lull investors and keep investors believing in him.

30. It was also part of the scheme that DUONG mailed formal notices and correspondence to investors, reporting on the companies and scheduling meetings, to further convince investors that the business and investment was legitimate and to lull them into a sense of security.

31. It was also part of the scheme that DUONG lulled investors by transferring their investments and allowing them to participate in new ventures when their investments failed to realize a profit. For example, in September 2000, after several investors complained and asked for a return of their money, DUONG gave them shares in his purported new venture, GLOBAL GARMENT, and issued stock certificates to these investors.

32. It was further part of the scheme that DUONG made up rules and regulations that the investors would have to follow to get a return of their money, thereby making it appear that they could not get their money back because of legitimate and legal rules and regulations governing corporations. Such investors would ultimately become frustrated and give up. For example, DUONG told investors that they could get their money back by selling their investments to other people or that the company, AGDC, would buy the shares back. DUONG, however, never did buy back the shares of any investor and never did return any of the principal, or pay any promised profits, to any investor.

## COUNTS ONE THROUGH FOURTEEN
Mail Fraud (18 U.S.C. § 1341)

THE GRAND JURY FURTHER CHARGES:

33. The allegations contained in paragraphs 1 through 32 are repeated and incorporated herein by reference.

34. On or about the dates set forth below, at Boston, Quincy, Framingham and elsewhere in the District of Massachusetts, the defendant,

### CHUONG VAN DUONG

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing, and attempting to execute, such scheme and artifice, did place and cause to be placed in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carrier, and did take and receive therefrom matters and things, and did knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, matters and things, as described below:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 1 | November 1, 1999 | Andover Bank check No. 682799 payable to International Company Services (USA) Inc. Re: Henry Van Le, together with Application to Form a Company mailed by Henry Le |
| 2 | November 24, 1999 | Letter from International Company Services (USA) Inc. to Henry Van Le enclosing documents regarding the incorporation of Thai Binh Minh International Trade Corp. received by Henry Le via the mail |

13

| 3 | September 12, 2000 | Letter from Asia Golden Dragon Corporation, signed by Chuong Van Duong and John Chang, to Nguyen Quoc Dinh and Pham Thi Hang regarding associates conference, mailed to Nguyen Quoc Dinh and Pham Thi Hang |
|---|---|---|
| 4 | September 12, 2000 | Letter from Asia Golden Dragon Corporation, signed by Chuong Van Duong and John Chang, to various individuals including Katherine Khang Nguyen, Zung Quoc Nguyen and The Cao regarding associates conference, mailed to Zung Quoc Nguyen |
| 5 | September 12, 2000 | Letter from Asia Golden Dragon Corporation, signed by Chuong Van Duong and John Chang, to various individuals including Katherine Khang Nguyen, Zung Quoc Nguyen and The Cao regarding Notice of Special Meeting, mailed to My The Cao |
| 6 | September 12, 2000 | Letter from Asia Golden Dragon Corporation to Mr. Henry Van Le and Mrs. Sau Nguyen Le, entitled "Urgent Notice" regarding Notice of Special Meeting, mailed to Henry Le and Mrs. Sau Nguyen Le |
| 7 | September 22, 2000 | Resolution, Request Resignation of President of Global Garment Exchange Internet Corp. from Chuong Van Duong and John Chang mailed to Zung Quoc Nguyen |
| 8 | October 26, 2000 | Letter from Nguyen Ngoc Dinh, Pham Thi Hang, and Zung Quoc Nguyen to Chuong Van Duong and John Chang |
| 9 | November 2, 2000 | Letter from Global Garment Exchange Internet Corp., signed by Chuong Van Duong and John Chang, to Mr. and Mrs. Nguyen Quoc Dinh |
| 10 | November 28, 2000 | Waiver of Notice of Special Meeting of Directors signed by J.H.N. and H.T. mailed to Thinh Dao |
| 11 | February 19, 2001 | Letter from Chuong Van Duong, Fifth Continental Capital Group Financial Corp., to Nguyen Quoc Dinh, Pham Thi Hang and Zung Quoc Nguyen, mailed to Zung Nguyen |
| 12 | March 22, 2001 | Minutes of Organizational Special meeting of Board of Directors of H&T Corporation signed by Joseph Nguyen and Kim Moreau mailed to Thinh Dao |

14

| 13 | July 16, 2002 | Contract between Bichngoc Import-Export Trading Service Co., Ltd. And KTM International Design & Model Corporation mailed from Mr. Nguyen Ngoc Vuong in Vietnam to Ms. Judy Nguyen and Mr. Duong Van Chuong at 1550 Hancock St., Quincy, MA |
| 14 | August 28, 2002 | Purchase Contracts between Super Jenny Fashion International Trading Corp. with no Party A (Seller) identified mailed from Tommy Tran in Dorchester, Massachusetts to Mr. Nguyen Ngoc Vuong in Vietnam. |

Each in violation of Title 18, United States Code, Sections 1341 and 2.

COUNTS FIFTEEN TO TWENTY-THREE
Money Laundering (18 U.S.C. § 1956(a))

THE GRAND JURY FURTHER CHARGES:

35. The allegations contained in paragraphs 1 through 32 are repeated and incorporated herein by reference.

36. On or about the dates set forth below, in the district of Massachusetts, the defendant

CHUONG VAN DUONG

did knowingly conduct and attempt to conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is mail fraud in violation of 18 U.S.C. §1341, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting or attempting to conduct such financial transactions knew that the property involved in the financial transactions, that is funds and monetary instruments in the amounts set forth below, represented the proceeds of some form of unlawful activity:

| COUNT | DATE | MONETARY TRANSACTION | AMOUNT |
|---|---|---|---|
| 15 | 11/18/99 | Check #1003 drawn on BankBoston account #XXX-X4388 i/n/o Asia Golden Dragon Corp. payable to Chuong Van Duong | $5,000.00 |
| 16 | 12/20/99 | Check #1011 drawn on BankBoston account #XXX-X4388 i/n/o Asia Golden Dragon Corp. payable to K.D.V. cashed at BankBoston cashed at BankBoston | $2,000.00 |
| 17 | 12/23/99 | Check #1012 drawn on BankBoston Account #XXX-X4388 i/n/o Asia Golden Dragon Corp. payable to Chuong Van Duong cashed at BankBoston | $9,000.00 |
| 18 | 11/8/00 | Deposit of Sovereign Bank cashier's check #243892913 into Citizen's Bank account #XXXXXX-581-9 i/n/o Chuong Van Duong | $5,000.00 |
| 19 | 11/8/00 | Deposit of Sovereign Bank cashier's check #243892914 into Citizen's Bank account #XXXXXX-739-0 i/n/o Asia Golden Dragon Corp. | $15,000.00 |
| 20 | 6/7/02 | Check #555 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $7,800.00 |
| 21 | 8/6/02 | Check #564 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $9,000.00 |
| 22 | 8/8/02 | Check #566 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $9,000.00 |
| 23 | 8/9/02 | Check #567 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $9,000.00 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.

## COUNTS TWENTY-FOUR THROUGH TWENTY-EIGHT
Structuring Transactions (31 U.S.C. §5324(a)(3))

THE GRAND JURY FURTHER CHARGES:

37. The allegations contained in paragraphs 1 through 32 are repeated and incorporated herein by reference.

38. On or about the dates set forth below, in the district of Massachusetts, the defendant,

### CHUONG VAN DUONG

assisted by other individuals, did knowingly and for the purpose of evading the reporting requirements of section 5313(a) of title 31, United States Code, and the regulations promulgated thereunder, structure and assist in structuring the following transactions with domestic financial institutions and did so while violating another law of the United States:

| COUNT | DATE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| 24 | 8/6/02 | Check #564 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $9,000.00 |
| | 8/8/02 | Check #566 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $9,000.00 |
| | 8/9/02 | Check #567 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $9,000.00 |

17

| 25 | 9/20/01 | Check #527 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to K.D.V. cashed at Citizen's Bank | $5,000.00 |
| | 9/20/01 | Check #528 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $8,000.00 |
| 26 | 8/18/03 | Check #657 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $9,000.00 |
| | 8/21/03 | Check #665 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $9,000.00 |
| | 8/22/03 | Check #667 drawn on Citizen's Bank account #XXXXXX-778-8 i/n/o International Diamond and Gem payable to Chuong Van Duong cashed at Citizen's Bank | $9,000.00 |
| 27 | 5/7/03 | Check #150 drawn on Asian American Bank account #XXXXX4490 i/n/o Chuong Van Duong payable to Chuong Van Duong cashed at Asian American Bank | $9,000.00 |
| | 5/8/03 | Check #151 drawn on Asian American Bank account #XXXXX4490 i/n/o Chuong Van Duong payable to Chuong Van Duong cashed at Asian American Bank | $9,000.00 |
| | 5/9/03 | Check #153 drawn on Asian American Bank account #XXXXX4490 i/n/o Chuong Van Duong payable to Chuong Van Duong cashed at Asian American Bank | $9,000.00 |

| | | | |
|---|---|---|---|
| 28 | 5/12/03 | Check #154 drawn on Asian American Bank account #XXXXX4490 i/n/o Chuong Van Duong payable to Chuong Van Duong cashed at Asian American Bank | $9,000.00 |
| | 5/14/03 | Check #156 drawn on Asian American Bank account #XXXXX4490 i/n/o Chuong Van Duong payable to Chuong Van Duong cashed at Asian American Bank | $9,000.00 |
| | 5/15/03 | Check #157 drawn on Asian American Bank account #XXXXX4490 i/n/o Chuong Van Duong payable to Chuong Van Duong cashed at Asian American Bank | $4,500.00 |

All in violation of Title 31, United States Code, Section 5324(a)(3) and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 981 and 28 U.S.C. § 2461(c) and 18 U.S.C. § 982)

THE GRAND JURY FURTHER CHARGES:

39.    As a result of the offenses in violation of 18 U.S.C. § 1341 charged in Counts One through Fourteen of this Indictment, the defendant,

### CHUONG VAN DUONG

shall forfeit to the United States any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense, including but not limited to:

a.    $200,000 in United States currency which DUONG took from approximately 10 or more investors.

19

40.    As a result of the offenses in violation of 18 U.S.C. § 1956(a) charged in Counts Fifteen through Twenty-Three of this Indictment, the defendant,

CHUONG VAN DUONG

shall forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property, including but not limited to:

a.    all funds credited to Fleet Boston checking account number XXX-X4388, held in the name of Asia Golden Dragon Corporation;

b.    all funds credited to Citizen's Bank checking account number XXXXXX-581-9, held in the name of Chuong Van Duong;

c.    all funds credited to Citizen's Bank checking account number XXXXXX-739-0, held in the name of Asia Golden Dragon Corporation; and

d.    all funds credited to Citizen's Bank checking account number XXXXXX-778-8, held in the name of International Diamond and Gem.

41.    As a result of the offenses in violation of 31 U.S.C. § 5324(a)(3) charged in Counts Twenty-Four through Twenty-Eight of this Indictment, the defendant,

CHUONG VAN DUONG

shall forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property, including, but not limited to:

a.    $116, 500 in United States currency structured by DUONG.

42.    If any of the forfeitable property, as described in paragraphs 39, 40 and 41 above, as a result of any act or omission of any defendant:

1.    cannot be located upon the exercise of due diligence;

20

2.      has been transferred or sold to, or deposited with, a third person;

3.      has been placed beyond the jurisdiction of the Court;

4.      has been substantially diminished in value; or

5.      has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraphs 39, 40 and 41 above.

All in violation of 18 U.S.C. §§ 982(a)(1) and 982(b)(1), 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY


_____
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; December 3, 2003.

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK    12:55pm