UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 03 CR 10363 RCL |
| | ) | |
| CHUONG VAN DUONG | ) | |
| Defendant | ) | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECOND MOTION FOR REVIEW
AND AMENDMENT OF ORDER OF DETENTION

The Defendant, Chuong Van Duong, has moved this Court for the second time to amend

the Order on Detention issued by United States Magistrate Judge Alexander on January 15,

2004.  The defendant, however, has not offered any new conditions, security, or information to

reasonably assure the defendant's appearance other than that offered at the initial detention

hearing and in his first motion to amend the detention order.  Again, the defendant has proposed

that the property of persons from whom he has taken approximately $180,000 be pledged as

security for his appearance.  The only new fact that the defendant raises -- that he has been

detained for 14 months[1] -- does not change the fact that neither the conditions he proposes, nor

any other conditions, will reasonably assure the defendant's appearance or the safety of the

community.  This Court should therefore refuse to amend the Order on Detention and deny the

defendant's motion.

---

[1]  The government notes that the defendant's case has been pending for 14 months due
predominantly to continuances requested by the defendant; all time has thus been excluded in the
interests of justice.

I.      **The Defendant Faces a Significant Penalty Upon Conviction and Has Both the Motivation and the Means to Flee**

By statute, the defendant faces a sentence of 5 years on each mail fraud count, 20 years on each money laundering count, and 10 years on each structuring count charged in the Indictment.  See 18 U.S.C. §1341, 18 U.S.C. §1956(a)(1)(B); 31 U.S.C. §5324(a)(3).  At a minimum, if the defendant is convicted of the charges in the Indictment, he faces a guideline sentence of 41 to 51 months and deportation.[2]  Even with credit for the 14 months he has served, the defendant still faces at least 27 months and then deportation.[3]  This significant penalty provides the defendant with a strong motivation to flee that is only further increased by the defendant's obvious displeasure with incarceration.

The defendant not only has the motivation to flee, but as Judge Alexander found, he has the means to do so.  See Order on Detention, pp. 3-4, attached as Exhibit A.  The defendant converted the large sums of money he obtained from victim-investors to cash, which has not been located and which provides the defendant with the financial ability to flee.  See Affidavit of Special Agent Ann Cotellesso in Support of Detention, ¶¶ 6, 7, 13, 15, 26 ("Detention Affidavit"), attached as Exhibit B.  Additionally, while not having any significant ties to

---

[2] The government also notes that the guideline sentencing range could be increased further based upon relevant conduct.

[3] The defendant contends that the guideline sentencing range he faces "would be somewhere in the range of 20 to 26 months" and the defendant faces 6-8 months further incarceration.  Based upon the government's calculations of loss and other factors and grouping of all charges, the government does not understand how the defendant arrived at such a guideline range and notes that there is no range in the guidelines sentencing table that is "20-26" months. Moreover, the defendant could face a sentence above the guideline range and up to the maximum statutory sentence in the exercise of the court's discretion.  Accordingly, the penalty he faces provides motivation for him to flee.

Massachusetts, the defendant appears to have well-established connections in other countries.

Prior to his arrest the defendant frequently traveled internationally, to countries including China,

Indonesia and Vietnam.  See Order on Detention, pp. 3-4; Detention Affidavit, ¶30.  In fact, as

part of his fraudulent scheme, he brought many of the victim-investors to these countries, using

the money they had given him, in an attempt to demonstrate his legitimacy by introducing them

to businessmen and government officials.  See Order on Detention pp.3-4; Detention Affidavit,

¶30.  Given that the defendant has both the significant motivation and the means to flee, neither

the conditions proposed by the defendant -- the same conditions he previously offered in his first

motion -- nor any other conditions will reasonably assure his appearance at trial or the safety of

the community.

**II.      The Conditions Proposed by the Defendant Will not Reasonable Assure His
           Appearance**

The defendant proposes the same conditions he suggested in his first motion to amend the

order of detention: 1) a pledge of property owned by individuals who invested at least $180,000

with him, have seen no return, and who the government contends are victims of his fraud and 2)

a proposal that the defendant live with such victims while on electronic monitoring.  The Court

should again reject these conditions.  As fully detailed in the Government's Opposition to the

Defendant's First Motion to Amend Detention Order, attached hereto as Exhibit C and

incorporated herein,[4] because the property offered by the defendant is not the property of the

defendant, but rather the property of victim/investors of the defendant, such property will not

---

[4] Rather than repeat the same arguments against the conditions proposed by the
defendant, the government relies upon and incorporates the facts and arguments detailed in its
Opposition to Defendant's First Motion to Amend Detention Order, filed on February 17, 2004
and attached hereto as Exhibit

assure the defendant's appearance and in fact, may subject such individuals to further harm from

the defendant.  Having failed to respect the $180,000 these individuals entrusted with him, there

is no reason to expect him to care about the loss of their property when his liberty is at stake.

Additionally, imposing as a pre-trial condition of release that the defendant actually reside with

an individual whom he has already defrauded risks further injury to such persons and does

nothing to ensure the defendant's appearance in court.  The Court should therefore deny the

defendant's motion.

**III.     The Nature and Circumstances of the Offenses Charged and the Strength of the
           Evidence Against the Defendant Support the Continued Detention of the Defendant
           Pending Trial**

The Defendant is charged with engaging in a scheme to defraud individuals of their hard-

earned money by inducing such persons to give him money for investment in his international

import-export businesses by means of false representations and promises.  In connection with his

fraudulent scheme, he is also charged with money laundering and structuring based upon the

financial transactions he conducted to convert the money he received from his victims into cash.

The government has to date been unable to locate the money the defendant took from his

victims.  The facts of the offenses with which the defendant is charged and the overwhelming

evidence against the defendant are detailed in the Detention Affidavit, submitted during the

initial detention hearing, attached hereto as Exhibit B and incorporated herein.  At least ten

victims who the defendant defrauded will testify as to the false statements and promises made by

him to induce them to give him their money – for many of them, their life's savings.  Although

there are additional victims who still support the defendant because of his persuasiveness and

their hope of recovering their money, the government expects that the evidence regarding their

investments and the documents presented to them by the defendant will demonstrate the same

pattern and scheme that the defendant used to defraud individuals before them, in 1996, 1998,

2000, and 2002.  Contrary to the defendant's assertion in his motion, the defendant's practice of

taking victim-investors to Asian countries to meet with the defendant's alleged business and

political contacts -- a practice he began in 1996 and used with most of his victims -- will assist in

proving the fraudulent scheme.  The evidence will show that the defendant conducted these

international trips to further the scheme, using money he obtained from the victims themselves to

pay for the trips.[5]  The government also anticipates offering evidence, including the testimony of

expert witnesses, to demonstrate the fraudulent nature of the contracts and other documents used

by the defendant in his scheme.

Given the destructive nature of the offenses with which the defendant is charged, the

strength of the evidence, and the potential penalty -- at least 41 months and deportation -- that

the defendant faces, there are no conditions which would assure the defendant's appearance and

prevent further victimization of others.

**IV.    The Defendant's Lack Of Significant  Family or Community Ties in Massachusetts
Increase the Defendant's Risk of Flight and Support Continued Detention**

In support of his motion, the defendant asserts that he has family ties in an attempt to

convince the Court that he would not flee the jurisdiction.  The existence of his ex-wife and

children was information that was known and addressed by Judge Alexander in the Order on

Detention.  As recognized by Judge Alexander, only one of the defendant's children resides in

the District and the defendant has failed to demonstrate a sense of responsibility to that child in

---

[5]  Contrary to the defendant's claim in his motion, the defendant did not have any
significant legitimate income to pay for these trips.

the past.  See Order on Detention, p. 4.  As probate records regarding this child demonstrate, the

defendant contested paternity, failed to pay child support, and even failed to show for court

appearances, which in one instance resulted in a capias being issued for his arrest.  See Detention

Affidavit, ¶ 29 and attached probate court records.  The defendant's other two children and ex-

wife live in Tennessee and therefore do not provide the defendant with ties to Massachusetts.

Further, as Judge Alexander found, in additional to having minimal family ties in the

district, the defendant was unable to clearly establish a place of residence in the district or

provide verified legitimate employment history -- all factors demonstrating a risk of flight.  See

Order on Detention, p. 4.  The defendant claims now that his continued payment of rent on his

jewelry business in Quincy demonstrates a tie to the community.  The government suggests,

however, that rather than showing a tie to the community, maintaining this location shows the

defendant's commitment to his fraudulent scheme.  The jewelry store at 1550 Hancock street

was the location from which the defendant operated his fraudulent corporations and scheme.

The income earned by the defendant from this jewelry business was minimal; the money he

obtained through his fraudulent scheme was significant.  See Detention affidavit, ¶ 28.

Moreover, given the defendant's lack of funds, the government questions who is actually paying

the rent on this store.  Since the money paid for rent is likely not the defendant's, such payments

can not show any commitment or ties to the community on the part of the defendant.

Finally, the defendant's assertion of his prior military service and health issues are factors

that should not persuade the Court to amend the Order on Detention.  The Defendant's military

history was known at the time the Detention Order was issued and therefore was previously

considered.  Moreover, this prior military service does not affect the defendant's high risk of

flight or in any was assure his appearance or the safety of the community.  Similarly, the

defendant's health issues do not decrease his risk of flight and may in fact increase that risk if he

is released.  Further, as conceded by the defendant in his motion, the defendant can receive

regular medical treatment while detained.  Accordingly, without any real family ties or ties to the

community here in Massachusetts and with extensive ties internationally, the risk of the

defendant's flight is further increased and his motion to amend the Order on Detention should be

denied.

CONCLUSION

For the foregoing reasons, this Court should therefore refuse to amend the Order on

Detention and the defendant should remain detained.


Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Maureen B. Hogan
Maureen B. Hogan
Assistant U.S. Attorney

Dated: February 23, 2005