UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO: 03-10363-RCL |
| | : | |
| CHUONG VAN DUONG | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**
and
**MOTION FOR DOWNWARD DEPARTURE**

**Introduction**

Defendant Chuong Van Duong submits this memorandum to assist the court in determining an appropriate sentence. For the reasons set forth in detail below, the defendant respectfully recommends that the court sentence Mr. Duong to time served and place him on a term of Supervised Release with a special condition that he remain in the Halfway House for a period of 12 months, wherein he can work and receive appropriate mental health treatment. That sentence is "sufficient, but not greater than necessary" to meet the purposes set forth in 18 U.S.C. §3553(a)(2). Under the circumstances present in Duong's offense and personal characteristics, it is a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence and protects the public from further criminal conduct by Mr. Duong.

Chuong Van Duong appeared before Your Honor on January 26, 2007, and offered an Alford plea to 14 counts of Mail Fraud in violation of Title 18 U.S.C. §1341. Other counts, 15 through 23 that allege Structuring were dismissed on 7/26/2006.

After *Booker,* a sentencing court must impose a sentence minimally "sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. §3553(a)(2). Under *Jiminez-Beltre*, 440 F.3d 514 (1st Cir 2006) the Court is required to begin the sentencing process by calculating the Guideline range, including resolution of any factual disputes and any departures. Then the Court may decide whether the "other factors" identified at 18: 3553(a) warrant a variance from the guideline range.

### The Advisory Guidelines: Unresolved Issues

The Presentence Report calculates the offense level at level 26. The defendant objects to two upward adjustments in the Presentence Report: the two-level enhancement imposed by Probation for the defendant's aggravating role in the offense; the two-level adjustment imposed by Probation for 10 – 50 vulnerable victims. The other objections relate to the loss figure which the defendant advises is $420,000, while the government avers the loss to be $854,110. With regard to loss, whether the Court finds the loss to be $420,000 or $854,110, the level at the loss table remains at 14 because losses between $400,000 - $1 million are at level 14 on the loss table. (The base level is six, increased by 14).

Rather than repeat the defendant's objections, reference is made to those objections contained in the addendum to the Presentence Report. As of this writing, the objections remain unresolved. In other respects, the defendant does not object to Probation's guideline calculations.

The government, however, has filed objections to Probation's granting of a two-level reduction for his Alford plea. The government complains that the defendant has not accepted responsibility because he disagrees with the Presentence Report's guideline

calculations. The defendant does not contest responsibility for the elements of the offense to which he offered his Alford plea. Mr. Duong continues to admit that he is accountable for the Mail Fraud counts inasmuch as he solicited $420,000 from various investors which the government could prove were by fraudulent means.

The defendant wishes to point out that the government's assertion that the "Offense Section" of the Presentence Report "clearly shows that Chang and Vo were assistants whose activities in connection with the fraudulent investment scheme were directed and controlled by Duong" was an offense section written by the government. The fact that both Chang and Vo have apparently fled speaks volumes about their role versus the defendant's role in this offense.

In assessing the defendant's demeanor at the plea, the Court is asked to consider Mr. Duong's mental condition as discussed in the Competency Examination ordered by Court (attached herein).

If the Court sustains the defendant's objections, the guideline range would be level 22, Criminal History Category I for a guideline range of 41 – 51 months. The defendant has already served 29 months in pretrial detention, with 12 months remaining to serve at the low end of the guideline. The defendant asks that he be permitted to serve that portion of the sentence in a Halfway House. Mr. Duong's request amounts to a departure from the guidelines.

In support of his request for a downward departure, Mr. Duong cites the conclusions posed by the Drs. Ronald Schouten and Tuong Van Nguyen. Dr. Schouten is a Psychiatrist and Lawyer. He is Director of the Law & Psychiatry Service of

3

Massachusetts General Hospital and Harvard Medical School. Dr. Tuong Van Nguyen is also a psychiatrist and as a Vietnamese understands the language and culture of Vietnam.

Concerned about Mr. Duong's mental competency, the government initially filed a motion with the Court for a competency examination. After a hearing before this Court, both doctors were asked by this Court to conduct a competency examination of Mr. Duong to determine if he was competent to stand trial and to assist in his own defense. By his demeanor and manner, this Court evidently agreed that there was reason to believe that Mr. Duong might not be mentally competent.

Although concluding that Mr. Duong was competent to understand the proceedings against him and to assist in his own defense, the examiners caution:

> While Mr. Duong does not appear to be substantially impaired in the basic knowledge and skills necessary for him to participate in the trial process and assist his attorneys, his marked grandiosity raises some concerns about his ability to make relevant decisions. This grandiosity takes the form of claimed accomplishments, abilities, and experiences that do not comport with expectations or are inconsistent with statements he has made to others.

The examiners opine that Mr. Duong does not appear to be simply "telling falsehoods" to try to deceive everyone because there are inconsistencies in the stories he tells to different audiences. Nor does it seem Mr. Duong's grandiosity is a symptom of a Delusional Disorder because again such stories would most likely be more consistent.

> Finally, Mr. Duong's grandiosity could be the product of a condition commonly known as pseudologia fantastica, a form of pathological lying, in which the person is compelled to invent stories, often as a way of compensating for some emotional deficit….They are believed by the speaker, and therefore can be very convincing until there is clear evidence to the contrary….There have been reported cases of this type of behavior associated with neurological abnormalities, although there is no evidence at this time that Mr. Duong is suffering from any neurological dysfunction.

4

The examiners recommend that the actual cause of Mr. Duong's grandiosity would require more extensive investigation of his past behavior, further clinical interview, and psychological assessment. *Id* Competency Exam.pg7.

The guidelines' provision at §5K2.13 <u>Diminished Capacity</u> encourages a downward departure if the defendant committed the offense while suffering from a significantly reduced mental capacity, and the condition contributed to the commission of the offense. Mr. Duong's questionable "ability to make relevant decisions" raises the concern that his involvement in the instant offense was facilitated by his mental condition. Mr. Duong does appear to have a significantly impaired ability to understand the wrongfulness of his criminal behavior. As such, it does not appear that further incarceration of Mr. Duong will serve to either rehabilitate him or prevent him from further criminal activity.

The defendant wishes the court to consider placing him in a halfway house where he will be supervised and required to work at a lawful job. In addition, the defendant requests, as indicated in the Competency Examination, that Mr. Duong undergo a complete psychological evaluation and testing to determine what course of treatment is appropriate for Mr. Duong. The Probation service has professionals on staff to supervise Mr. Duong and ensure that he commits no further crimes and receives the proper psychological treatment.

**Post-Booker Considerations**

It is now settled law pursuant to *United States v Booker,* 125 S.Ct. 738 (2005), that when imposing sentence the Court must consider the Sentencing Guidelines and Policy Statements. *Booker* requires that in addition to considering the final advisory

5

guideline calculation, the sentencing court is mandated to consider the statutory sentencing factors at 18 U.S.C. §3553(a) among which are (a)(1), the nature and circumstances of the offense and the history and characteristics of the defendant.

<u>Personal Characteristics of the Defendant</u>
And
<u>Nature and Circumstances of the Offense</u>

Although there are gross inconsistencies in some reported facts of Mr. Duong's life, there is some verification for his service in the South Vietnamese Army i.e., discharge papers indicate rank of Lieutenant at separation.

Chuong Van Duong was born on December 21,1948, in Thai Binh, (North) Vietnam.[1] He reports that his father was killed by the Communists in 1953 and his mother was left to raise Duong and his 10 siblings; she died in 1979. He has given various versions of his higher level education but he has claimed to have earned a bachelor's degree in economics and political science at Dalat University, in South Vietnam. He seems to have enlisted in the South Vietnamese army about 1968-69 and, again, makes various claims about his duties. Among the more problematic are that he worked as a sort of liaison with the U.S. Army, providing them with information about North Vietnam; that he received several medals from the U.S. Army including the Purple Heart; and that he was a pilot (and shot down). [Whatever his duties or rank, attached are photographs of himself in a military uniform with American soldiers.] He advises that he was captured by the Viet Cong during the final hostilities of the war [1975?] and was sent to a prison camp in

---

[1] In 1948 Vietnam was actually unified as the Democratic Republic of Vietnam, already at war with the French who were still claiming to control the country. It was not until the signing of the armistice in Geneva in 1954 that Vietnam was divided along the 17th parallel into North and South Vietnam  Duong will claim that he attended Dalat University between about 1966-69;  Dalat was in South Vietnam, and it is never explained when or how he and his family settled in South Vietnam, but he does claim that his father was killed by the Communists in 1953 so they may have fled south at that time or at the time of the 1954 partition.

North Vietnam; there he was tortured because he was suspected of working for the American C.I.A, and suffered one or more bodily injuries; in one account he says he was shot while being tortured and in another that he was hit on the head by a guard's rifle butt.

After eight years in re-education camps and five years on probation, on his release (from the camps) he further advises, that he was effectively paralyzed for one year due to the mistreatment and lack of food.  By this time it would be about 1983 and his immigration file states that he worked as a grocer for the next ten years. He had been married since 1970 to a Vin Thi Nguyen, who already had two children. In 1993 they applied to immigrate to the United States through some human rights organization, and after a brief period in Thailand, he and his wife and children came to the United States, entering on November 15, 1993. They settled in Memphis, Tennessee, where he got a job either as a sewer in a factory or as a carpenter.  But after only six months, apparently his wife wanted to take up with another man so he moved up to Woonsocket, Rhode Island, to live with a sister.  His first job there was assembling automobile parts but he was fired when they found out that he had problems with his hand—which he attributes to a gunshot wound.

In some unspecified but relatively short time afterwards, Duong moved to Massachusetts and by 1994 Duong says he was operating his own thrift shop in Framingham, Mass. and also worked the third shift at a mail sorting company. (The government will also report that official documents have Duong claiming he worked as a machine operator for a company in Massachusetts between 1995-1997.)

7

By about 1995, Duong started an import/export business, the Asia Golden Dragon Corporation (AGDC); although he claims it was located in Quincy, Mass., an official state document indicates AGDC's principal office was located at 333 Washington Street in Boston.  John K. Chang, of Chinese extraction, is listed as the treasurer of this first of several companies Duong will form, and Chang will continue to be listed as an officer of these companies until Duong is arrested in December 2003.  At that time Chang apparently fled to China.  Beginning in or around 2000, Duong was also closely associated with Kim Vo, a Vietnamese female lawyer based in Dorchester section of Boston; she played an active role in his various enterprises but also fled Boston and moved to Hawaii after his arrest in 2003.

Until the time of his arrest, Duong set up a series of businesses under different names but the government claims that "AGDC was the principal corporate entity through which Duong purported to conduct business with investors during the 1996 through 2003 period covered by the indictment in this case."  These businesses appear to have been largely paper entities, but beginning in or around 2000, Duong did open a jewelry store under the name of International Diamond & Gem Company in Quincy, Mass. It appears that the reason for doing so is that he had a falling out with a Katherine Nguyen, who owned her own jewelry store on Washington Street in Boston; between about 1998 and 2000, Duong and Katherine were romantically involved and he operated his various businesses out of her jewelry store.

Since separating from his wife in Memphis, it is not clear whether they ever got a legal divorce.  Their daughter is now 33 and works and lives in Memphis; their son is 23 and attends college in Memphis. Duong claims to speak with them weekly over the

phone. Duong purportedly also has a ten-year-old son by a Vietnamese woman living in Massachusetts with whom he had a relationship. He does not seem to have ever established a permanent residence or at least he owns no real estate of record. Since his release from prison in May 2006, he has been residing with his third-party custodian, Kim Dung Thi Tran, at 176 Kingsbury Avenue, Bradford, Mass. Ms. Tran, a close friend of Duong since 2002 and describes him as "a very kind" man and also says he has helped a lot of people. Other friends or acquaintances of Duong have also written in positive terms about Duong. Van Henry Binh describes Duong as "a good person….very kind with warm hearted [sic] who always wants to do something to help people." Kimanh Dinh describes him as "a honest responsible, kind and affectionate person." Jane Tremblay, another close friend, states that he is "a very good person" who has been "very nice" to her and she says she will assist him in any way she can.

      Chuong Van Dong has no previous criminal record. The only blemish on his record is a restraining order issued in October 2000 in the Brighton [Mass.] District Court on a complaint by a female employee at his jewelry store; the order was vacated in February 2001. Mr. Duong explains that he confronted the woman who assisted him in the jewelry store when he caught her stealing from him. The restraining order was vacated after the court understood the situation.

      There is no record or indication of any substance abuse nor is there any evidence of a gambling problem. Whatever sums of money Duong did earn or collect between 1996 and 2003 that were not needed for his basic subsistence seem to have been spent on his numerous trips abroad, and he reports assets of only some $38,000. It must be noted that Mr. Duong at 58 years old had never committed a crime before 1996 when Mr.

9

Chang and Ms. Vo came into his life. Neither of these two is available, having fled Boston.

## Meeting the Purposes of this Sentence

As Chuong Van Duong stands now before the Court, the Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute at 18 U.S.C.§3553(a)(2) i.e., (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. (B) to afford adequate deterrence to criminal conduct. (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

The defendant recommends a sentence of time served with a term of supervised release to follow. A condition of supervised release that requires Mr. Duong to remain at the Coolidge House in Boston and under the supervision of both the Halfway House and the Probation department is sufficient to meet the purposes of the statute. Mr. Duong should also undergo a psychological examination that includes testing and a recommendation for treatment to be followed up by the Probation department. These measures will ensure that Mr. Duong commits no further crimes and gets the medical care that he needs to continue to live in the community productively.

The proposed sentence affords adequate deterrence to criminal conduct because his conviction and time already spent in custody has sent a message that there will be punishment. It serves a specific deterrence to the defendant since the Halfway House will supervise him and ensure that he works at a lawful place of employment. This sentence also protects the public from further crimes of the defendant for the same reason

that it provides specific deterrence.  There is no useful purpose served to further incarcerate this defendant as the same issues that face him now will face him at the conclusion of another period of incarceration.  It is apparent that the issue here is to ensure that Mr. Duong is supervised and undergoes treatment to deal with his mental health issues.

Whether the Court arrives at a guideline range that includes a departure for Diminished capacity, or relies on the post – *Booker* factors at §3553(a), explicated above, or a combination of both, a sentence of time served, followed by a period of placement in a halfway house with proper special conditions, is sufficient but not greater than necessary to meet the purposes of sentences.

> Respectfully submitted,
> CHUONG VAN DUONG,
> By his attorney,

DATED:  June 1, 2007

/s/ George C. McMahon
George C. McMahon BBO# 338240
Marina Bay
308 Victory Road
Quincy, MA 02171
(617) 770-0600